**F I L E D**

**PUBLISH**

**April 7, 2006**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

WYANDOTTE NATION, a Federally
Recognized Indian Tribe,

      Plaintiff-Appellant,

v.

KATHLEEN SEBELIUS, in her official
capacity as Governor of Kansas; WILLIAM
R. SECK, in his official capacity as the
Superintendent of the Kansas State Highway
Patrol; RONALD MILLER, in his official
capacity as Chief of Police, City of Kansas
City, Kansas; LARRY WELCH, in his
official capacity as Director of the Kansas
Bureau of Investigation; JOE REARDON,[*] in
his official capacity as Mayor, City of Kansas
City, Kansas; PHILL KLINE, in his official
capacity as Attorney General for the State of
Kansas; PHILLIP L. SIEVE, in his official
capacity as District Court Judge for the State
of Kansas, County of Wyandotte; NICK A.
TOMASIC, in his official capacity as
Wyandotte County, Kansas District Attorney,

      Defendants-Appellees.

No. 04-3431, 04-3432

----------------------------------------------

UNITED STATES OF AMERICA,

      Amicus Curiae.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Joe Reardon is substituted for Carol
Marinovich as Mayor of Kansas City, Kansas.

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 04-2140)**

Conly Schulte, Monteau & Peebles, L.L.P., Omaha, Nebraska (Shilee T. Mullin with counsel on the briefs) for Plaintiff-Appellant.

Steven D. Alexander, Assistant Attorney General, Topeka, Kansas (Phill Kline, Attorney General; David W. Davies, Deputy Attorney General, Topeka, Kansas, with counsel on the briefs) for Defendants-Appellees.

R. Justin Smith, United States Department of Justice, Washington, DC (Kelly A. Johnson, Acting Assistant Attorney General; William B. Lazarus, Todd S. Aagaard, United States Department of Justice, Washington, D.C.; Maria Getoff and Andrea Lord, Staff Attorneys, National Indian Gaming Commission with counsel on the briefs) for Amicus Curiae.

Before **LUCERO**, **BRORBY**, and **HARTZ**, Circuit Judges.

**LUCERO**, Circuit Judge.

The Wyandotte Nation, a federally recognized Indian Tribe, appeals the entry of a preliminary injunction barring the tribe from conducting gaming on the Shriner Tract in Kansas City, Kansas. Kathleen Sebelius, the Governor of Kansas, and various other Kansas officials cross-appeal, challenging an injunction preventing them from enforcing Kansas's gaming laws on the Shriner Tract and ordering them to return money and property seized when Kansas raided a casino located on the property. Because the district court acted properly when enjoining

the state from enforcing its law on what is most likely Indian land, we **AFFIRM** the injunction against the State Defendants.  However, because the district court, in clear violation of Fed. R. Civ. P. 65(a), provided the Wyandotte with no notice that they were going to be enjoined and because it relied on a misreading of a previous order of this court, the injunction against the Wyandotte is **VACATED**.

I

For ten years, the Wyandotte Nation, the State of Kansas, and the United States have been locked in litigation in multiple fora over the fate of the Shriner Tract, a piece of land in downtown Kansas City, Kansas.  This long battle has produced a procedural history as complex as a random maze.  Much of this history has been recapped in Sac & Fox Nation v. Norton, 240 F.3d 1250, 1253-58 (10th Cir. 2001).  However, because the outcome of this case turns on developments in prior and concurrent litigation, it is necessary to review this epic tale of claims and counter-claims, federal regulators and state agents, legislation and lots and lots of law suits.[1]

---

[1] In addition to the instant case, the conflict involves at least three other cases, two of which are still pending.  See Sac & Fox Nation, 240 F.3d at 1250 (challenge to Secretary of the Interior's initial decision to take Shriner Tract into trust); Governor of Kan. v. Norton, 2005 WL 1785275 (D. Kan. 2005) (challenging Secretary's determination that only statutory funds were used to take Tract into trust); Wyandotte Nation v. Nat'l Indian Gaming Comm'n, D. D.C. Case No. 04-1727-RMU (challenge to National Indian Gaming Commission's decision that Wyandotte may not conduct gaming on the Shriner Tract).

## A

This history of legal disputes between Kansas, the United States and the Wyandotte over the Shriner Tract began more than three decades ago. In 1973, the Indian Claims Commission held that the federal government illegally took tribal lands belonging to the Wyandotte. Strong v. United States, 30 Ind. Cl. Comm. 8, 21-22 (I.C.C. 1973); Strong v. United States, 30 Ind. Cl. Comm. 337, 353-54 (I.C.C. 1973). In 1984, Congress enacted legislation that appropriated money to satisfy that judgment. Pub. L. 98-602, 98 Stat. 3149 (1984). The legislation stated that a portion of the overall award – $100,000 – was to be used "for the purchase of real property which shall be held in trust by the Secretary [of the Interior] for the benefit of [the Wyandotte Nation]." Pub. L. 98-602, § 105(b)(1). See also Sac & Fox Nation, 240 F.3d at 1255.

In 1996, the Wyandotte informed the Secretary that they wanted to buy the Shriner Tract. Id. at 1257. The Secretary published in the Federal Register a Notice of Intent to take the Shriner Tract into trust for the Wyandotte. Id. at 1256. As long as only funds authorized by Pub. L. 98-602 were used, the Secretary had a non-discretionary duty to take the land into trust. Id. at 1262.

Worried that the Wyandotte would build a casino on the Shriner Tract if it were taken into trust, the Governor of Kansas sprung into action and, along with

several Indian tribes, sued the Secretary to stop the federal government from taking the Shriner Tract into trust for the Wyandotte. Id. at 1256. This case was entitled Sac & Fox Nation v. Norton. The district court granted a temporary restraining order ("TRO") preventing the Secretary from taking the land into trust. Id. at 1256-57. Because the tribe, which had moved to intervene, was under contract to purchase the land immediately, they challenged the TRO. On July 15, 1996 ("July 15th Order"), we vacated the TRO, stating in relevant part:

> 4. We hear this matter on an emergency basis and wish to preserve, as best we can, the rights of all parties. In order to do so, [We] take into specific consideration the statement of the United States Attorney and the counsel for the Wyandotte Tribe that acquisition by the Secretary of this land in trust will not affect or bar the ultimate resolution of whether this land can be used for Class III gaming pursuant to the Indian Gaming Regulatory Act. ["IGRA"][2]

> 5. In order to preserve the status quo, we grant the [Wyandotte's] emergency application for stay and hold that the temporary restraining order entered below is dissolved, subject to the conditions which constitute the law of this case, that the respective rights of the parties to obtain judicial review of all issues which have been raised in the complaint below shall be preserved, including standing of all parties, jurisdiction, compliance by the Secretary with all requirements of law, and the ultimate question of whether gaming shall be permitted on the subject land.

---

[2] Under IGRA, there are three classes of Indian gaming. Class I consists of traditional forms of gaming associated with ceremonies and celebrations and social games for prizes of minimal value, Class II consists primarily of bingo, lotto, and related games, and Class III encompasses all other forms of gaming, including roulette, blackjack, and slot machines. First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1168 n.2 (10th Cir. 2005); 25 U.S.C. § 2703.

On an emergency basis, the plaintiffs – the Governor of Kansas and the other tribes – filed a motion to clarify that Class I and Class II gaming were prohibited on the Shriner Tract pending the resolution of Sac & Fox Nation. The next day, we issued an order (the "July 16th Order") denying this motion:

> Plaintiffs-Appellees [i.e., Kansas] have filed an emergency motion for clarification of our order of July 15, 1996. They contend that the order 'inadvertently' allows gaming on the subject property other than class III gaming under the Indian Gaming Regulatory Act and suggests that the order be modified to prohibit any gaming on the land pending resolution of the suit below. After consideration of the motion, we conclude that it should be denied. Paragraph five of our July 15, 1996 order specifically states that all issues raised below are preserved for judicial review, including 'the ultimate question of whether gaming shall be permitted on the subject land itself.' This broad language clearly includes all classes of gaming. The motion is denied.

The Secretary then purchased the Shriner tract and took it into trust for the Wyandotte. Sac & Fox, 240 F.3d at 1257.

Sac & Fox Nation continued in district court until the court dismissed the case on procedural grounds. Id. at 1253. Kansas and the tribes appealed the decision and we reversed the district court's procedural ruling and addressed the merits of the case. On the merits, we affirmed the Secretary's ruling that she had a non-discretionary duty to take the Shriner tract into trust if the tribe used only Pub. L. 98-602 funds to purchase the land. However, we found that the Secretary had not provided substantial evidence that the Wyandotte used only Pub. L. 98-

- 6 -

602 funds to purchase the Shriner Tract. Id. at 1261-63.[3] We remanded the case to the district court with an order to remand the case to the Secretary to determine the source of the funds. Id. at 1263-68. The district court did so and entered final judgment in the matter, seemingly ending the Sac & Fox case.

On remand, the Secretary determined that the Shriner Tract was purchased exclusively with Pub. L. 98-602 funds. 67 Fed. Reg. 10,926 (March 11, 2002). Kansas presented an administrative challenge to this determination, but it was rejected. Kansas officials filed suit, challenging the Secretary's decision on remand. That suit is now pending in district court in Kansas. Governor of Kan. v. Norton, 2005 WL 1785275 (D. Kan. July 27, 2005).

**B**

On the basis of the Secretary's determination that the Shriner Tract was appropriately acquired in trust, the Wyandotte opened a Class II gaming facility on the Tract. Tribes may conduct Class II gaming on Indian land in states where such gaming is permitted, subject to provisions of IGRA. 25 U.S.C. § 2710(a)(2), (b).

---

[3] The source of the funds is relevant to Kansas's ability to challenge the Secretary's actions. If only funds authorized by Pub. L. 98-602 were used to purchase the land, the Secretary has a non-discretionary duty to purchase the land in trust. If not, the decision was discretionary under the Indian Reorganization Act and therefore is subject to legal challenge. Id. at 1262.

The Wyandotte's decision to open the casino set off a furious round of legal maneuvering. The Attorney General of Kansas responded to the opening of the casino by sending a letter asking the National Indian Gaming Commission ("NIGC") to exercise its power to regulate gaming on the Shriner Tract. The NIGC responded to the Attorney General's letter, stating that it had jurisdiction to regulate gaming on the land and that it was in the process of investigating whether gaming was legal on the property under IGRA.[4] The NIGC then sent the Wyandotte a letter, informing them that it and not the state had jurisdiction over the new casino because it was on Indian Land but that the land could not be used for gaming because it did not qualify under IGRA's requirements.[5]

The Wyandotte immediately brought suit in federal court in the District of Columbia seeking review of the NIGC decision under the Administrative Procedure Act and requesting a declaratory judgment that they could lawfully

---

[4] Dissatisfied with this response, the Attorney General brought suit against the Secretary to force the NIGC to close the casino, but later abandoned the suit before any decision was rendered. Kansas v. Norton, Case No. 03-4179-JAR.

[5] Title 25 U.S.C. § 2719(a) provides that land approved in trust for the benefit of a tribe may not be used for gaming unless it fits within certain exceptions. See 25 U.S.C. § 2719(b). The NIGC letter explained that the Shriner Tract did not fall within any of these exceptions.

conduct gaming on the Shriner Tract. <u>Wyandotte Nation v. Nat'l Indian Gaming Comm'n</u>, Case No. 04-0513 (D. D.C.).[6]

Determined to shut down the tribe's gaming facility and unwilling to wait for the case to travel through proper legal channels, Kansas officials decided to simply bypass the federal court system. They sought and obtained a search warrant in Kansas state court based on suspected violations of state gaming law. On April 2, 2004, armed officials from the Kansas City Police Department, the Kansas Bureau of Investigation, and the Office of the State Attorney General stormed the casino, seized gambling proceeds and files, and confiscated gaming machines. The law enforcement officers arrested Ellis Enyart, the casino's general manager, for violating state gambling laws. That same day, the officers seized a bank account owned by the Wyandotte. In total, the officers seized more than $1.25 million in cash and equipment. Criminal charges were filed against Enyart but a state court rightly dismissed them because Kansas has no authority to

---

[6] On September 10, 2004, after the events described <u>infra</u>, the NIGC issued a final decision that the Wyandotte could not conduct gaming on the Shriner Tract. The Wyandotte challenged that final decision in a separate proceeding in federal court in the District of Columbia. <u>Wyandotte Nation v. Nat'l Indian Gaming Comm'n</u>, Case No. 04-1727-RMU (D. D.C.). On the NIGC's motion, that court transferred the case to the District of Kansas, where it is now pending. Case No-05-cv-2210-JAR-JPO (D. Kan.).

enforce its gaming laws on the Shriner Tract. <u>Kansas v. Enyart</u>, Case No. 04-CR-540 (Kan. Dist. Ct.) (July 7, 2004 Order).[7]

In response to the state's raid, the Wyandotte amended the complaint then pending in federal court in the District of Columbia to include the State Defendants and requested a TRO preventing the state from taking any further enforcement actions. The district court stated that the raid "appears to have been unlawful because the Shriner Tract is indisputably Indian land" over which the federal government has exclusive jurisdiction over gambling. <u>Wyandotte Nation v. Nat'l Indian Gaming Comm'n</u>, Case No. 04-0513 (Order of April 2, 2004). However, the court held that it had no jurisdiction over the state officers and transferred the case to Kansas.

After the case was transferred, the Wyandotte sought and the district court granted a preliminary injunction against the State Defendants.[8] The court ordered the State Defendants to return the monies and machines seized in the April 2nd raid and barred the state from exercising any jurisdiction over gaming or related activities on the Shriner Tract. The district court, however, went further.

---

[7] Kansas appealed this determination but then voluntarily dismissed its appeal on October 14, 2004. <u>Kansas v. Enyart</u>, Case No. 04-92855 (Kan. Ct. App.).

[8] The Wyandotte first filed a motion for a TRO. This motion was denied and we upheld this decision on appeal. <u>Wyandotte Nation v. Nat'l Indian Gaming Comm'n</u>, 99 Fed. Appx. 836 (10th Cir. 2004) (unpublished).

Without providing notice to the Wyandotte, the district court sua sponte enjoined the tribe from conducting gaming or related activities on the Shriner Tract. Wyandotte Nation v. Sebelius, 337 F.Supp.2d 1253, 1274 (D. Kan. 2004).

The Wyandotte now appeal this decision. Kansas cross-appeals, challenging the injunction issued against its enforcement of its laws on the Shriner Tract.

## II

The Wyandotte challenge the district court's order enjoining them from conducting gaming operations on the Shriner Tract until the legal status of the Tract and the Wyandotte's ability to conduct gaming operations on it has been finally adjudicated. Because the injunction was granted without notice, and because there was no legal basis for the district court's action, we vacate the preliminary injunction against the Wyandotte.

A district court's grant or denial of a preliminary injunction is reviewed under an abuse of discretion standard. Dominion Video Satellite, Inc. v. EchoStar Satellite Corp., 269 F.3d 1149, 1153 (10th Cir. 2001). A district court abuses its discretion when it commits an error of law or makes clearly erroneous factual findings. Id.

On its own and without providing any form of notice, the district court issued its injunction against the Wyandotte. Kansas did not request this

injunction nor did the court inform anyone in any public proceeding that it was considering issuing an injunction against the Wyandotte.

Fed. R. Civ. P. 65(a)(1) states clearly: "No preliminary injunction shall be issued without notice to the adverse party." Although we have never addressed the matter, the text of this rule is clear: courts simply cannot issue injunctions without providing notice to the adverse party.[9] "Preliminary injunctions entered without notice to the opposing party are generally dissolved." United States v. Microsoft, 147 F.3d 935, 944 (D.C. Cir. 1998). See also Rosen v. Siegel, 106 F.3d 28, 32 (2d Cir. 1997); Parker v. Ryan, 960 F.2d 543, 544 (5th Cir. 1992); Reed v. Cleveland Bd. of Educ., 581 F.2d 570, 573 (6th Cir. 1978). The Wyandotte were not given notice that an injunction was being considered. This is an obvious violation of Rule 65 and is a clear abuse of discretion.

The State Defendants argue that the district court did not actually issue an injunction in violation of Rule 65, but instead enforced two orders of this court – specifically the July 15th and July 16th orders in the Sac & Fox case. Those orders, the State Defendants claim, barred the Wyandotte from conducting any type of gaming on the Shriner Tract.

---

[9] We have considered and rejected a rule adopted by the Fifth Circuit that a court must provide notice five business days before issuing an injunction under Rule 65(a)(1). Dominion Video Satellite, Inc., 269 F.3d at 1154. Nothing in that opinion, however, suggests that a district court can issue a preliminary injunction without giving the parties any notice at all.

The State Defendants misread these orders. Neither order addresses whether gaming is permitted on the Shriner Tract before final resolution of the various strands of litigation between Kansas, the Wyandotte, and the United States.[10]

As noted above, the July 15th Order vacated a TRO against the Secretary of the Interior, thereby permitting the Secretary to purchase the Shriner Tract and place it in trust for the Wyandotte, pending final determination of the propriety of the Secretary's determination that doing so was required by law. Those portions

---

[10] Further, it is unclear that the July 15th and July 16th orders continue to have any legal validity. "The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held." University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). The Sac & Fox case, in which the orders were issued, is over; the district court issued a final judgment terminating the case on August 23, 2001. "[A]lthough a preliminary injunction is usually not subject to a fixed time limitation, it "is ipso facto dissolved by a dismissal of the complaint or the entry of a final decree in the cause." Fundicao Tupy S.A. v. United States, 841 F.2d 1101, 1103 (Fed. Cir. 1988). However, in Sac & Fox, we remanded the case to the Secretary of the Interior to determine whether Pub. L. 98-602 funds had been used to purchase the Shriner Tract. The Secretary's decision that only such funds had been used is currently being challenged in district court in Kansas. See Governor of Kansas v. Norton, 2005 WL 1785275 (July 27, 2005, D. Kan). The district court seized on this fact and held that the July 15th and 16th Orders survived because the entirety of the dispute between the Wyandotte and the State of Kansas is one "seamless thread" of litigation. Sebelius, 337 F. Supp. 2d at 1268. Because neither the July 15th nor the July 16th Order bar the Wyandotte from conducting gaming operations on the Shriner Tract, we need not examine the district court's "seamless thread" theory.

of the July 15th Order cited by the State Defendants do not discuss whether the Wyandotte may operate a gaming facility on the Shriner Tract during the litigation. Instead, they discuss the legal incidence of permitting the Secretary to take the land into trust. The Order states that both the federal government and the Wyandotte agree that "acquisition by the Secretary of this land in trust will not affect or bar the ultimate resolution of whether this land can be used for Class III gaming pursuant to the Indian Gaming Regulatory Act." We endorsed the view of the Secretary and the Wyandotte, stating:

> "[W]e . . . hold . . . that the respective rights of the parties to obtain judicial review of all issues which have been raised in the complaint below shall be preserved, including . . . the ultimate question of whether gaming shall be permitted on the subject land."

(emphasis added). Our July 15th Order thus allowed the purchase of the Shriner Tract, but ensured that the purchase would not affect the resolution of the ultimate question of whether gaming should be permitted. It simply did not speak to what activities were permitted on the Shriner Tract before the ultimate resolution of the case.

Our July 16th Order was issued in response to the Governor of Kansas's motion for clarification, which argued that the July 15th Order "inadvertently" authorized gaming on the subject property other than class III gaming under IGRA. The motion requested that the order be modified to prohibit any gaming on the land pending resolution of the suit below.

We denied this motion because "our July 15, 1996 order specifically states that all issues raised below are preserved for judicial review, 'including the ultimate question of whether gaming shall be permitted on the subject land.'" (quoting the July 15 Order). The July 16th Order thereby confirmed that permitting the Secretary to take the land into trust would not affect whether, as a final matter, any type of gaming – Class I, II, or III – could take place on the Shriner Tract. This second order makes very clear that nothing in the first order addresses whether gambling is permitted during the litigation. Like the July 15th Order, nothing in the July 16th Order says whether the Wyandotte can or cannot conduct gaming on the Shriner Tract before the final resolution of the litigation between the parties.

Because the injunction against the Wyandotte was issued without notice, and because neither the July 15th nor the July 16th Order justify an injunction, the preliminary injunction against the Wyandotte is vacated.[11]

---

[11] Even had there been notice and a substantial legal basis for issuing an injunction, the grant of such an injunction may have been improper because of the doctrine of primary jurisdiction. "The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." Williams Pipe Line Co. v. Empire Gas Corp., 76 F.3d 1491, 1496 (10th Cir. 1996) (quoting National Communications Ass'n, Inc. v. American Tel. and Tel. Co., 46 F.3d 220, 223 (2d Cir. 1995)). Clearly, the determination of whether gaming is allowed on Indian lands under IGRA is within the NIGC's area of experience. However, we

(continued...)

- 15 -

## III

On cross-appeal, the State Defendants argue that the district court's decision enjoining them from enforcing state gaming laws on the Shriner Tract and mandating that they return the money and equipment seized in the April 2, 2004 raid of the Wyandotte's casino was an abuse of discretion. Although the district court applied an incorrect legal standard, an independent review of the record makes clear that an injunction is appropriate. As such, we affirm this portion of the district court's order.

A preliminary injunction is appropriate when "(1) the movant will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the movant ultimately will prevail on the merits; (3) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest." Kiowa Indian Tribe of Oklahoma v. Hoover, 150 F.3d 1163, 1171 (10th Cir. 1998). In general, we review the decision to grant a preliminary injunction for abuse of discretion. Winnebago Tribe v. Stovall, 341 F.3d 1202, 1205 (10th Cir. 2003). "The state must show that the district court committed an error of law (for

[11](...continued)
need not determine whether it would have been appropriate to defer to the NIGC under the doctrine of primary jurisdiction because it is clear that the district court should not have issued the injunction against the Wyandotte.

example, by applying the wrong legal standard) or committed clear error in its factual findings." Id.

The district court did apply the wrong legal standard, at least in part. The Wyandotte concede that the relief they seek is not only prohibitory but is also mandatory – they asked the court to order Kansas to both refrain from enforcing state gaming laws on the Shriner Tract in the future and to return the proceeds, files and equipment seized when the state raided their casino on April 2, 2004. The district court improperly relied on our decision in SCFC ILC, Inc., v. Visa USA, Inc., 936 F.2d 1096, 1099 (10th Cir. 1991), and applied a standard that required movants seeking a mandatory injunction to "carry the heavier burden of showing that the traditional four factors weigh heavily and compellingly in favor of granting the injunction." Sebelius, 337 F.Supp.2d at 1267 (quotations marks omitted). That standard was explicitly overruled in O Centro Espirita Beneficient Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975-76 (10th Cir. 2004) aff'd 2006 WL 386374 (U.S. Feb 21, 2006) (NO. 04-1084). In O Centro, we held that a movant seeking a mandatory injunction must prove "that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course . . . [and] must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms . . . ." Id.

This legal error, however, does not require a remand to the district court. In Schrier v. Univ. of Colo., 427 F.3d 1253, 1261 (10th Cir. 2005), we faced an identical situation: a lower court had used the "heavily and compelling standard" instead of the O Centro standard for determining whether a mandatory injunction was appropriate. Instead of remanding, we simply reviewed the arguments for an injunction on the merits and affirmed the lower court's determination because the "erroneous application of the 'heavily and compelling' standard was at most harmless." Id. at 1267. See also O Centro, 389 F.3d at 982 n.5 (noting that, where "the record on appeal is sufficiently well developed, it is appropriate for the court to determine in the first instance whether [the plaintiff] has met the requisite burden"). In this case, the record is clear that an injunction against the state was appropriate.

The district court held that there was irreparable injury because the State Defendants impermissibly intruded on the Wyandotte's sovereignty by enforcing state law on Indian land. We have repeatedly stated that such an invasion of tribal sovereignty can constitute irreparable injury. See, e.g., Hoover, 150 F.3d at 1171-72; Seneca-Cayuga v. Oklahoma, 874 F.2d 709, 716 (10th Cir. 1989). The State Defendants argue that there was no irreparable injury because the Wyandotte do not have sovereignty over the Shriner Tract. However, the Secretary of the Interior has taken the land into trust for the Wyandotte and the

district court rightly noted that it is likely that the Secretary's decision will be affirmed. As such, the district court's determination that there was irreparable injury was proper.

In determining that the harm caused to the State Defendants by granting the injunction was substantially outweighed by the harm that the Wyandotte would suffer if the court had not granted the injunction, the district court held that "an order enjoining the State Defendants from exerting jurisdiction could very well adversely affect the State of Kansas's sovereignty, but in the context of entering a preliminary injunction, the Tribe is faced with more devastating losses than the State Defendants' temporary inability to enforce its state gaming laws." Sebelius, 337 F.Supp.2d at 1270. Even at the heightened standard by which mandatory injunctions are judged, the State Defendants present no compelling reason to conclude this determination is flawed. Because, as will be discussed below, the likelihood that courts will determine that Kansas can exercise jurisdiction over the Shriner Tract is remote, the harm caused by granting the injunction to Kansas is minimal at best whereas the harm to the Wyandotte's sovereignty and well-being caused by permitting the state to continue exercising jurisdiction is quite substantial.

Similarly, the district court found that issuing a preliminary injunction would not be contrary to the public interest. Id. The reason for this is that

issuing the preliminary injunction does not permanently prevent the state from prosecuting violations of state gaming law on the Shriner Tract. "[T]he State Defendants are only required to refrain from enforcement until these critical sovereignty issues can be adjudicated." Id. If Kansas is eventually successful in gaining jurisdiction over the land, the injunction will certainly not stop them from prosecuting their laws. Further, state gaming laws can be enforced by the NIGC. Granting the injunction is in no way contrary to the public interest.

Finally, the court addressed the likelihood of success on the merits. The Secretary of the Interior has determined that only funds authorized by Pub. L. 98-602 were used to purchase the Shriner Tract and has affirmed the trust status of the land. Although Kansas officials have appealed this decision, the Secretary's determination is entitled to deference under the Administrative Procedure Act. Even if the Secretary's determination is reversed, the State Defendants would face another hurdle to gain jurisdiction over the land: they would have to successfully challenge the Secretary's decision to take the land into trust for the Wyandotte under the Indian Reorganization Act. 25 U.S.C.S. § 465; Sac & Fox, 240 F.3d at 1261. Given this string of barriers, the district court determined that it was extremely likely that the land would eventually be determined to be held in trust for the Wyandotte. Sebelius, 337 F. Supp. 2d at 1272. Because IGRA gives the federal government exclusive jurisdiction over gaming on Indian Land, 18 U.S.C.

§ 1166(d), and because the most likely result is that the trust status of the Shriner Tract would be confirmed, the district court found that the Wyandotte had a high likelihood of success on the merits. This determination was clearly correct.

A review of the record shows that the exigencies of the case support granting the injunction. Kansas bypassed the proper legal channels by not waiting for a court determination about the status of the Shriner Tract or for the NIGC to exercise jurisdiction over the land. There was no legal basis for the state's action and very little likelihood that the state will ever have a legal justification for enforcing its gaming laws on the Shriner Tract. A failure to grant the injunction would cause the Wyandotte serious harm. Further, the Wyandotte made a strong showing with regard to the likelihood of success on the merits and the balance of harms. Under O Centro, an injunction against the State Defendants in this case is appropriate. The district court's decision to issue an injunction against the State Defendants, ordering them to refrain from enforcing state gaming laws on the Shriner Tract and to return all the property and cash seized in the April 2, 2004 raid of the casino, should not be upset.

**IV**

Because the district court did not provide notice, and because it had no legal basis for enjoining the Wyandotte from conducting gaming activities on the Shriner Tract, we **VACATE** the injunction against the Wyandotte. The district

court's decision enjoining the State Defendants was not an abuse of discretion. As such, we **AFFIRM** that part of the order and **REMAND** for further proceedings consistent with this opinion.