**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PROSPER, INC., a Utah corporation,
successor in interest to Ethan and
Randy, L.C., a Utah limited liability
company,

      Plaintiff - Appellant,

v.

INNOVATIVE SOFTWARE
TECHNOLOGIES, a California
corporation,

      Defendant - Appellee.

No. 05-4176
(D.C. No. 05-CV-98-PGC)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **TYMKOVICH**, Circuit Judges, and **EAGAN,**[**] District Judge.

---

    Plaintiff-Appellant Prosper, Inc. appeals from the district court's denial of

its motion for a preliminary injunction against Defendant-Appellee Innovative

Software Technologies, Inc. ("IST").  On appeal, Prosper argues that the district

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Claire V. Eagan, District Judge, United States District
Court of the Northern District of Oklahoma, sitting by designation.

court abused its discretion in failing to grant injunctive relief and also by failing to hold a hearing. Aplt. Br. at 2, 25. We exercise jurisdiction pursuant to 28 U.S.C. § 1292(a) and affirm.

## Background

IST, a company engaged in marketing technology, software services and training applications, purchased the stock of Energy Professional Marketing Group Corporation ("EPMG") from James Garn and Ethan Willis, EPMG's sole shareholders. Aplt. App. at 95. Garn and Willis later asserted claims against IST, which IST denied. Id. at 94, 107. On July 2, 2004, IST entered into a settlement agreement (the "Agreement") with Garn, Willis, and their separate company, Ethan & Randy, L.C. ("E&R"), the predecessor in interest to Prosper. Under the terms of the Agreement, IST transferred EPMG assets to E&R and released competition and solicitation restrictions previously imposed.

Prosper's underlying breach of contract claims arise out of this Agreement. As we understand it, when EPMG products were sold to a customer, EPMG recognized revenue, but also allowed for estimated returns and refunds ("EMPG reserves"). EPMG also paid commissions to those procuring the sale, an EPMG employee, and a client or "lead provider." EPMG paid out most of the commissions at the time of a sale (90%), and recognized a potential obligation to pay the remainder ("employee reserves" and "client reserves"). See id. at 401

¶ 6, 408-409.  EPMG did not pay out the entire amount of the commissions because of the potential for customer returns and refunds.

The parties dispute the nature of the unpaid or retained commissions reflected in the reserve accounts.  Prosper contends that IST obtained these "funds" by withholding commissions owed to others.  Aplt. Reply Br. at 19 ("The funds were identified and accounted-for.  IST promised to pay the funds to the appropriate parties.  Nevertheless, IST has kept the funds and ceased accounting for them.") (citations omitted).  On the other hand, IST contends that there are no separate funds or deposit accounts holding these amounts; rather, the reserve amounts are future contingent liabilities that may exist pursuant to the Agreement.  Aplt. App. 536-37.  Whatever the precise accounting classification of the reserve accounts, nothing in this record suggests that the reserve amounts are actual liquid assets segregated from the general assets of IST.  The Agreement obligated IST to pay the client reserves then existing in accordance with existing contracts between IST and the clients, or if none, IST's historical practice.  Aplt. App. 119-20.  That said, we agree with IST that any such amounts would be paid from the general assets of EPMG, not a specific fund. Id.; see also id. at 536-37.

Prosper filed suit on February 4, 2005, alleging breach of contract and unjust enrichment based on IST's supposed failure to pay these client reserves as specified in the Agreement.  IST denied the claims and disputed its obligation to pay.  On March 25, 2005, Prosper moved for a preliminary injunction to prevent

"IST from using or depleting the funds held in the reserves pending the resolution of this controversy." Id. at 9. Prosper did not request, and the district court did not hold, a hearing on the matter, and the parties submitted testimony by affidavit and provided written materials.

On June 24, 2005, the district court denied Prosper's motion for a preliminary injunction after considering the traditional four factors, concluding that Prosper made an insufficient showing. Prosper appealed and moved for expedited review, which we now deny as moot. We agree with the district court that Prosper was not entitled to a preliminary injunction, but for somewhat different reasons than those set forth by the district court. See Colorado Flying Acad., Inc. v. United States, 724 F.2d 871, 880 (10th Cir. 1984) (we can affirm on any grounds that find support in the record).

Discussion

We review the district court's denial of a preliminary injunction for an abuse of discretion. Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1252 (10th Cir. 2006); Schrier v. Univ. of Co., 427 F.3d 1253, 1258 (10th Cir. 2005). "A district court abuses its discretion when it commits an error of law or makes clearly erroneous factual findings." Wyandotte Nation, 443 F.3d at 1252. An abuse of discretion is "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." Schrier, 427 F.3d at 1258 (quoting Coletti v. Cudd

- 4 -

Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999)). We review the district court's legal determinations de novo. Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1255 (10th Cir. 2003).

Here, the district court's denial of a preliminary injunction was not an abuse of discretion because such an injunction would be improper in this type of situation. A district court has "no authority to issue a preliminary injunction preventing [defendants] from disposing of their assets pending adjudication of [plaintiff's] contract claim for money damages." Grupo Mexicano de Desarrollo, S.A., v. Alliance Bond Fund, Inc., 527 U.S. 308, 333 (1999). The requirement "that the creditor obtain a prior judgment is a fundamental protection in debtor-creditor law– rendered all the more important in our federal system by the debtor's right to a jury trial on the legal claim." Id. at 330. A creditor with no rights to a debtor's property cannot restrain the debtor's use of that property prior to a final judgment. See id. at 333; see also Dateline Exp., Inc. v. Basic Constr., Inc., 306 F.3d 912, 914 (9th Cir. 2002) (per curium). We recognize too the rights of unsecured creditors, but they have a remedy in state attachment and garnishment procedures, not a preliminary injunction. See Grupo Mexicano, 527 U.S. at 330-31.

Seeking specific performance of a contract, here a settlement agreement, does not render Grupo Mexicano immaterial. Prosper is, as a practical matter, seeking to ensure that should it prevail on the merits, the general assets of IST are

available to pay to third parties, i.e. employee and lead providers, who at best are unsecured creditors, and indeed, have not even filed suit. As we have rejected the idea that Prosper is seeking to litigate a specific asset or fund of IST, we do not find applicable the notion that a district court has the power to grant an interlocutory injunction to preserve a fund that might be subject to a final decree or to enjoin conduct that might be enjoined under a final decree. See In re Fredeman Litig., 843 F.2d 821, 827-28 (5th Cir. 1988). The fact that Prosper seeks a specified amount of money to be paid to the third parties does not render that same dollar amount of IST's assets *related to the underlying dispute* for the purposes of our analysis. See Aplt. App. at 588 (citing Rosen v. Cascade Int'l Inc., 21 F.3d 1520, 1526-28 & n.19 (11th Cir. 1994)).

Regardless, we find that even if the district court could have issued the injunction, it did not abuse its discretion in deciding that Prosper had not sufficiently demonstrated irreparable injury. See e.g. Greater Yellowstone, 321 F.3d at 1255 (party seeking preliminary injunction must show four factors, one of which is that it will suffer irreparable harm absent issuance of the injunction). There is no "fund" here that is threatened, and money damages could provide an adequate remedy. See Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1250 (10th Cir. 2001) (no irreparable harm when the injury can "be adequately atoned for in money"). Irreparable injury must be "both certain and

great, not merely serious or substantial." Id.[1]

Of course, Prosper argues that the district court's determination on lack of irreparable injury should be rejected because the district court failed to hold an evidentiary hearing. In pertinent part, Prosper argues that the IST's own SEC filings undercut an affidavit supplied by IST suggesting that "[b]ased upon available cash and accounts receivable, IST has sufficient funds to pay the full claims of the lead providers and Prosper." Aplt. App. at 542. Though the issue is close, given the absence of a request for a hearing and some conjecture on what that hearing would have demonstrated in this regard, we cannot conclude that the district court abused its discretion. In addition, the district court's finding that Prosper failed to demonstrate irreparable harm to its business is supported by the record.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

---

[1] We recognize that difficulty in "collecting a damage judgment may support a claim of irreparable injury." Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 354 (10th Cir. 1986). We hold, rather, that in this case, the district court did not abuse its discretion in finding that irreparable harm was not sufficiently certain.