BALDOCK, Circuit Judge.
Plaintiff Ellen Mendelsohn sued her former employer Defendant Sprint/United Management Company (Sprint), alleging Sprint unlawfully discriminated against her on the basis of age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. Mendelsohn alleged she was selected for termination on account of her age during a company-wide reduction in force (RIF). After a trial on the merits, a jury returned a verdict for Sprint. At issue in this appeal is whether the district court erred in excluding testimonial evidence from former Sprint employees who alleged similar discrimination during the same RIF. We *1225 have jurisdiction under 28 U.S.C. § 1291. Because the evidentiary exclusion deprived Mendelsohn of a full opportunity to present her case to the jury, we conclude the district court abused its discretion in excluding the evidence. We reverse and remand for a new trial.
I.
Mendelsohn worked for Sprint from 1989 until November 2002, when Sprint terminated her as part of an ongoing company-wide RIF. At the time, Mendelsohn was fifty-one years old and the oldest manager in her unit. Mendelsohn brought her claim under the ADEA alleging Sprint selected her for the RIF based on her age. As evidence of Sprint’s alleged discriminatory animus toward older employees, Mendelsohn sought to introduce evidence that Sprint terminated five other employees over the age of forty as part of the same RIF. These employees apparently believed they too were victims of age discrimination. Through their testimony as well as her own, Mendelsohn sought to introduce evidence of a pervasive atmosphere of age discrimination at Sprint.
Prior to trial, Sprint filed a motion in limine seeking to exclude, among other things, any evidence of Sprint’s alleged discriminatory treatment of other employees. Relying exclusively on Aramburu v. The Boeing Co., 112 F.3d 1398, 1404 (10th Cir.1997), Sprint argued any reference to alleged discrimination by any supervisor other than Paul Reddick, Mendelsohn’s supervisor, was irrelevant to the issue in this case — i.e. whether Mendelsohn’s age motivated Sprint to terminate her. Apparently persuaded by Sprint’s argument, the district court granted the motion in part without much explanation, and limited Mendelsohn’s evidence to “Sprint employees who are similarly situated to her.”[1] To prove the employees were “similarly situated,” the district court required Mendelsohn to show Reddick supervised the employees and Sprint terminated them in close temporal proximity to Mendelsohn’s termination. Because Reddick did not supervise any of the other employees Mendelsohn sought to place on the stand, the district court excluded their testimony at trial. Following the court’s in limine ruling, Mendelsohn submitted in writing a proper offer of proof.
Following an eight-day trial, the jury returned a verdict for Sprint finding Sprint did not discriminate against Mendelsohn on the basis of age. Mendelsohn then filed a motion for a new trial renewing her objections to the district court’s in limine ruling. See Fed.R.Civ.P. 50(b). The district court denied the motion, and Mendelsohn timely appealed.
*1226 II.
Mendelsohn argues the district court committed reversible error by requiring her to show she and the other employees shared a supervisor as a precondition for admissibility of their testimony. According to Mendelsohn, the testimony of other employees in the protected age group who were subject to substantially similar RIF terminations was relevant and admissible as reflecting on Sprint’s discriminatory intent in selecting Mendelsohn to the RIF. Sprint, on the other hand, maintains any evidence of its treatment toward other employees is not relevant to the determination of this action because the evidence does not make it more likely that Sprint discriminated against Mendelsohn.
We review the district court’s ruling to exclude evidence for an abuse of discretion. See Whittington v. Nordam Group Inc., 429 F.3d 986, 1000 (10th Cir. 2005). Applying this standard, we will reverse the district court only if it “made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.” Bryant v. Farmers Ins. Exchange, 432 F.3d 1114, 1122 (10th Cir.2005) (citation omitted). An “[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.... ” Fed. R.Evid. 103(a). Applying these standards, we agree with Mendelsohn that the evidence she sought to introduce is relevant to Sprint’s discriminatory animus toward older workers, and the exclusion of such evidence unfairly inhibited Mendelsohn from presenting her case to the jury. See, e.g., Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1168 (10th Cir.1998) (identifying as a theory of pretext in RIF cases evidence of an employer’s general policy of using a RIF to terminate older employees in favor of younger employees).
A.
To prevail on a discriminatory discharge claim under the ADEA, a plaintiff bears the burden of proving age was the motivating factor for the employer’s decision to terminate her. See Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). As part of her proof, the plaintiff must persuade the jury that the employer’s proffered reason for its conduct is unworthy of belief. See Pippin v. Burlington Resources Oil And Gas Co., 440 F.3d 1186, 1193 (10th Cir.2006). Because direct testimony as to the employer’s mental processes seldom exits, see Reeves, 530 U.S. at 141, 120 S.Ct. 2097, evidence of the employer’s general discriminatory propensities may be relevant and admissible to prove discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (“Other evidence that may be relevant to any showing of pretext includes ... [the employer’s] general policy and practice with respect to minority employment.”); see also United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-14 n. 2, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).
We have previously recognized the testimony of employees, other than the plaintiff, concerning how the employer treated them as relevant to the employer’s discriminatory intent. See Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir.1990). For example, in Greene v. Safeway Stores, Inc., 98 F.3d 554 (10th Cir.1996), and Bingman v. Natkin & Company, 937 F.2d 553 (10th Cir.1991), we recognized evidence the employer had terminated other older employees was relevant as evidence of a pattern of dismissal based on age. Similarly, in Coletti v. Cudd Pressure Control, 165 F.3d 767, 776 (10th Cir.1999), we found testimony of other employees regarding how defendant treated them *1227 relevant to the defendant’s discriminatory intent where “testimony establishes a pattern of retaliatory behavior or tends to discredit the employer’s assertion of legitimate motive.”[2]
Sprint would have us extend the “same supervisor” rule announced in Aramburu to this case. In Aramburu, we held in the context of a discriminatory discipline action that plaintiffs seeking to present testimony of other employees who were treated more favorably for violating the same work rule (or another of comparable seriousness) as evidence of discriminatory intent, must show they shared the same supervisor with the proffered witnesses. As we have observed elsewhere: “The ‘same supervisor’ test has been found to be relevant in cases involving allegations of discriminatory disciplinary actions.” Equal Employment Opportunity Comm’n v. Horizon/CMS Healthcare, 220 F.3d 1184, 1198 n. 10 (10th Cir.2000). In discussing Aramburu, we explained comparison of a supervisor’s disciplinary action with other disciplinary action of the same supervisor is relevant to show the bias of the supervisor. For example:
If X fires A, an Hispanic, for particular misconduct, but gives only a warning to B, a non-Hispanie, for identical misconduct, one might infer that something beyond the misconduct (such as a bias by X against Hispanics) motivated the disciplinary action. But if it was Y, not X, who decided not to impose a harsher sanction against B, one cannot infer that X’s decision to fire A must have been motivated by something other than A’s misconduct. X may simply have a less tolerant view toward misconduct than Y does. Cf. Kendrick, 220 F.3d at 1233 (“Different supervisors will inevitably react differently to employee insubordination.”).
Rivera v. City and County of Denver, 365 F.3d 912, 922 (10th Cir.2004). This case, on the other hand, is not about individual conduct but about a company-wide policy of which all Sprint’s supervisors were allegedly aware. Accordingly, we decline to extend the “same supervisor” rule beyond the context of disciplinary cases.
Since deciding Aramburu, we have only applied the “same supervisor” rule in the context of alleged discriminatory discipline. See, e.g., MacKenzie v. City and County of Denver, 414 F.3d 1266, 1277 (10th Cir.2005); Rivera, 365 F.3d at 922; Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1232 (10th Cir.2000). For example, in Gossett v. Oklahoma ex rel. Bd. of Regents for Langston University, 245 F.3d 1172 (10th Cir.2001), a gender discrimination case, we declined to extend the application of the “same supervisor” rule beyond its original context. There we noted that while “in the context of allegations of discriminatory discipline, this court has looked to whether the plaintiff and others with whom he seeks to compare himself worked under the same supervisor,” in the context of a faculty-wide policy, “the failure of the plaintiff and [the other witnesses] to share the same supervisor does not preclude the consideration of that evidence.... ” 245 F.3d at 1177-78. Similarly, in Horizon/CMS Healthcare, a pregnancy discrimination case, we explained the “same supervisor” rule was not legally relevant to the inquiry of whether a plaintiff has been the victim of an allegedly discriminatory company-wide policy. 220 *1228 F.3d at 1198 n. 10. Thus, the fact that plaintiff and the affiants did not share the same supervisor in that case did not preclude consideration of affiants’ evidence.
Aramburu has no application where, as here, plaintiff claims to be a victim of a company-wide discriminatory RIF. Applying Aramburu’s “same supervisor” rule in the context of an alleged discriminatory company-wide RIF would, in many circumstances, make it significantly difficult, if not impossible, for a plaintiff to prove a case of discrimination based on circumstantial evidence. Conceivably, a plaintiff might be the only employee selected for a RIF supervised by a particular supervisor. Meanwhile, scores of other employees within the protected group also selected for the RIF might work for different supervisors. In such cases, the constraints of Aramburu would preclude a plaintiff from introducing testimony from those other employees. Applying Aramburu to cases of discrimination based on an alleged company-wide discriminatory RIF would create an unwarranted disparity between those cases where the plaintiff is fortunate enough to have other RIF’d employees in the protected class working for her supervisor, and those cases where the plaintiff is not so fortunate. We do not think such disparity should exist.
B.
The testimony of the other employees concerning Sprint’s alleged discriminatory treatment and similar RIF terminations is “logically or reasonably” tied to the decision to terminate Mendelsohn. Spulak, 894 F.2d at 1156 n. 2 (upholding a district court’s decision to allow former employees in the protected age group to testify about the circumstances surrounding them employment departure). In this case, the other employees’ testimony is logically tied to Sprint’s alleged motive in selecting Mendelsohn to the RIF. Although Mendelsohn and the other employees worked under different supervisors, Sprint terminated all of them within a year as part of an ongoing company-wide RIF. All the employees were in the protected age group, and their selection to the RIF was based on similar criteria. Accordingly, testimony concerning the other employees’ circumstances was relevant to Sprint’s discriminatory intent.
According to the dissent, the evidence Mendelsohn proffered need not be admitted because it is “devoid of independent evidence showing that Sprint had company-wide discriminatory policies.” Dissent at 4. The dissent, however, does not explain what this independent evidence might be. In Gossett, we noted that evidence regarding the discriminatory application of an enterprise-wide policy by other supervisors was admissible when the plaintiff has “other evidence of that poliey[.]” 245 F.3d at 1177. Thus, we required a plaintiff to proffer evidence, other than her oum testimony, concerning the alleged application of said policy. In Gossett, the plaintiff satisfied this requirement by introducing an affidavit from a former student and professor concerning the application of the policy. Id. at 1177, 1179 n. 2.
Similarly, Mendelsohn in this case proffered independent evidence in the form of testimony from other Sprint employees who were similarly terminated during the RIF. The dissent mistakenly reads Gossett to require independent evidence apart from that evidence which Mendelsohn has proffered. Reading Gossett in such a manner may place an insurmountable evidentiary burden upon a claimant entitled to prove her case of age discrimination by circumstantial evidence. See Merrick v. Northern Natural Gas Co., Div. of Enron Corp., 911 F.2d 426, 429 (10th Cir.1990) (noting the ADEA does not require an employee to produce direct evidence of discriminatory intent; rather the employee *1229 only need show the employer’s proffered justification is unworthy of belief). We respectfully disagree with the dissent’s interpretation of Gossett.
Moreover, the dissent claims “the district court did not apply a narrow interpretation of admissibility to the evidence of company-wide discrimination,” because the district court admitted into evidence exhibits 3 and 4. Dissent at 2. Those exhibits are a compilation of documents Sprint used during the RIF process that includes spreadsheets containing, among other data, the names and age of Sprint employees who were being considered for termination. In addition, the court permitted Jo Renda, Director of Human Resources, to testify concerning the use of these documents during the RIF process. With the exception of Mendelsohn, however, none of the employees identified in the spreadsheets testified at trial. The dissent fails to recognize the limited purpose for which the district court admitted this evidence as well as the distinct characteristic of the evidence the district court excluded in its ruling on the motion in limine.
Of particular relevance to the case was whether Sprint followed its own procedures when it selected Mendelsohn for the RIF. In fact, the district court denied Sprint’s motion for summary judgment on this very issue. The district court made quite clear that exhibits 3 and 4 as well as Renda’s testimony was allowed to come in for the purpose of determining Sprint’s compliance with its procedures:
[T]he reason I overruled your motion for summary judgment was because there was, I thought, sufficient evidence in the record that Sprint didn’t follow its own procedures. I think that makes the whole process, you know, fair game, what was the procedure and was it followed? And if this spreadsheet was used as part of the implementation of the RIF and it has ages on it, then I think that it’s fair game for the jury.
It was never my intention to preclude Plaintiff from putting on evidence about the RIF, how it worked, whether Sprint followed its own RIF procedures, et. cetera.
Aplt’s Supp. Appx. at 88, 92-93. In response to Sprint’s concerns regarding the improper use of this evidence the district court reiterated that its in limine ruling was aimed at excluding “other employees ... from coming in and saying, I was RIF’d, it was because of my age” and that the ruling applied to this evidence. Id. at 93-94. The court made clear Mendelsohn’s use of this evidence would have to conform to the in limine ruling. See id. at 55-56. Therefore, these exhibits were not offered for the purpose of showing pretext under the theory Sprint had a policy of favoring younger employees. Instead, the district court admitted this evidence under a different theory of pretext by showing Sprint did not follow its own RIF criteria. In addition, Jo Renda was able to use this evidence to find examples of older employees whom Sprint had retained, even though they were not supervised by Red-dick. Thus, the district court’s in limine ruling disadvantaged Mendelsohn further because Sprint was allowed to portray itself as retaining older employees, aside from Mendelsohn, even though these employees were not all supervised by Red-dick.
Admission of exhibits 3 and 4 did not remedy the error the district court made in excluding evidence concerning Sprint’s alleged treatment of other employees and the circumstances surrounding their RIF termination. The nature of the evidence Mendelsohn proffered is vastly different from the evidence the jury considered— *1230 merely names and dates of birth. Evidence of an employer’s alleged prior discriminatory conduct toward other employees in the protected class has long been admissible to show an employer’s state of mind or attitude toward members of the protected class. See, e.g., McDonnell Douglas Corp., 411 U.S. at 804, 93 S.Ct. 1817; Aikens, 460 U.S. at 713-14 n. 2, 103 S.Ct. 1478; Estes v. Dick Smith Ford, Inc., 856 F.2d 1097,1102-03 (8th Cir.1988); Hunter v. Allis-Chalmers Corp., Engine Din, 797 F.2d 1417, 1423-24 (7th Cir.1986). These other employees should have been allowed to take the stand and testify subject, of course, to any district court ruling regarding the proper use and limitations of such testimony.[3]
Generally, a court’s evidentiary ruling is entitled to deference. See Shugart v. Central Rural Elec. Co-op., 110 F.3d 1501, 1508 (10th Cir.1997). But the court’s discretion over evidentiary matters should not unfairly prevent a plaintiff a full opportunity to present her case. See Gos-sett, 245 F.3d at 1178. Blanket pretrial evidentiary exclusions, in particular, “can be especially damaging in employment cases, in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer’s account of its own motives.” Hawkins v. Hennepin Technical Center, 900 F.2d 153 (8th Cir.1990) (citation omitted). The evidence which Mendelsohn seeks to present, “is certainly not conclusive evidence of age discrimination itself, but it is surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, and proceed to assess the employer’s explanation” for its motive in terminating Mendelsohn. Greene, 98 F.3d at 561. Age as a motivation for Sprint’s selection of Mendelsohn to the RIF becomes more probable when the fact-finder is allowed to consider evidence of (1) an atmosphere of age discrimination, and (2) Sprint’s selection of other older employees to the RIF.[4]
C.
Finally, Sprint argues the testimony should be excluded under Fed. R.Evid. 403. Rule 403 allows a district court to exclude relevant evidence when concerns over unfair prejudice, confusion, or waste of time substantially outweigh the probative value of the evidence. Sprint argues that allowing the evidence would prejudice Sprint because it would result in Sprint having to defend multiple claims of discrimination. To be sure, the district court retains its power to limit cumulative *1231 and marginally relevant testimony. But otherwise, we disagree. Excluding otherwise admissible evidence under Rule 403 “is an extraordinary remedy [that] should be used sparingly.” United States v. Roberts, 88 F.3d 872, 880 (10th Cir.1996). “In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.” Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir.2000) (internal quotations omitted). Little doubt exists that the admission of evidence about other alleged episodes of discrimination would inconvenience Sprint. But the fact Sprint would have to rebut this testimony is not in itself enough to outweigh the probative value of Mendelsohn’s proffered evidence. See Bingman, 937 F.2d at 557. Based on the record before us, we cannot say the evidence is unduly prejudicial.[5]
Accordingly, for the reasons stated above the district court’s order denying Mendelsohn’s motion for a new trial is reversed. We remand to the district court for further proceedings consistent with this opinion.
REVERSED and REMANDED.[6]

. The district court, without the benefit of a proffer or a hearing, decided the motion by minute entry on the docket sheet. The entry reads:
Paragraph 1 is SUSTAINED as to evidence that Sprint has a pattern and practice, culture or history of age discrimination.... Plaintiff may offer evidence of discrimination against Sprint employees who are similarly situated to her. "Similarly situated employees,” for purposes of this ruling, requires proof that (1) Paul Ruddick [sic] was the decision-maker in any adverse employment action; and (2) temporal proximity. We believe this approach lacking. As we previously have explained, district courts must be sufficiently detailed in their rulings so as to provide us with an understanding of the process the court used to reach its decision. Otherwise, we have difficulty reviewing the trial court's decision, in particular when our review is for an abuse of discretion. See United States v. Roberts, 88 F.3d 872, 882 (10th Cir.1996) ("As an appellate court, we are in no position to speculate about the possible considerations which might have informed the district court’s judgment. Instead, we require an on the record decision by the court explaining its reasoning in detail.”).

. Sprint points out Mendelsohn's proffered evidence resembles “pattern and practice” but she does not allege a claim for a pattern and practice of discrimination. Yet we have allowed evidence of a pattern and practice in individual cases of discrimination as circumstantial evidence of a defendant's discriminatory animus. See, e.g., Greene, 98 F.3d at 561; Bingman, 937 F.2d at 556-57; see also Gossett v. Oklahoma ex rel. Bd. of Regents for Langston University, 245 F.3d 1172, 1177-78 (10th Cir.2001).

. We do not disagree with the dissent that statistical evidence to support an inference of an company-wide policy is useful, and perhaps quite convincing. See Dissent at 1232-33. But while "[s]tatisitical evidence may, in certain circumstances, be relevant to this purpose!,]” we have never required it. Beaird, 145 F.3d at 1168.

. The dissent characterizes the question of admissibility as a classic judgment call and readily acknowledges that had the district court admitted the evidence it would have acted within its discretion. The dissent, however, overlooks our established rule that a district court necessarily abuses its discretion "when it commits an error of law,” Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1252 (10th Cir.2006), or "fails to consider the applicable legal standard____” Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir.1997). For instance, in Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1105-08 (10th Cir. 2001), we held the district court abused its discretion in decertifying a class of plaintiffs because the court failed to consider the "pattern and practice” legal framework applicable to the plaintiffs' claim of discrimination. In the same manner, the district court here abused its discretion when it excluded the testimonial evidence based upon its erroneous conclusion that Arambum controlled the fate of the evidence in this case. See also Floyd v. Ortiz, 300 F.3d 1223, 1227 (10th Cir.2002) (holding the district court abused its discretion in denying the plaintiff's request for rehearing because the district court relied on an erroneous legal premise to do so).

. Sprint lastly argues any error the district court might have made was harmless because Ms. Mendelsohn did not have a submissible case of age discrimination. Based on the record before us, and in light of the evidence the district court excluded, we conclude Ms. Mendelsohn has a submissible case to present to the jury.

. Nothing in our ruling is intended to limit the district court’s discretion during trial to issue limiting instructions or rulings concerning the proper purpose for which Mendelsohn's evidence may be introduced.