69 F.3d 1503
 Fed. Carr. Cas. P 83,997, 64 USLW 2296
 Frank J. KELLEY, Attorney General of the State of Michigan,
The Oklahoma Corporation Commission; The Montana Public
Service Commission; Coalition Against Federal Preemption of
State Motor Carrier Regulation; The International
Brotherhood of Teamsters, Plaintiffs-Appellants,
Carla Stovall, Attorney General of the State of Kansas,
Kansas Corporation Commission,
Plaintiffs-Intervenors-Appellants,
v.
The UNITED STATES of America, ex rel. the Department of
Justice; and Janet Reno, Attorney General of the
United States, Defendants-Appellees.
 Nos. 95-6000, 95-6033.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 2, 1995.
 
 W. Robert Alderson and John E. Jandera of Alderson, Alderson & Montgomery, Topeka, Kansas, (Robert E. McFarland of Foster, Swift, Collins & Smith, Farmington Hills, Michigan; Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, and Kelly G. Keenan, Assistant Deputy Attorney General, Lansing, Michigan; Leslie Wilson Pepper, Charles "Andy" Adams, Oklahoma City, Oklahoma; Martin Jacobson, Helena, Montana; Richard C. Labarthe, Kevin M. Coffey, and Jack C. Moore of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Oklahoma; Dale E. Isley of Williams & Isley, Denver, Colorado; Marc J. Fink and Torbjorn Sjogren of Sher & Blackwell, Washington, D.C., with them on the briefs), for appellants.
 Peter R. Maier, U.S. Department of Justice, Washington, D.C., (Leonard Schaitman, U.S. Department of Justice, Washington, D.C., with him on the brief), for appellees.
 Kenneth R. Nance, Oklahoma City, Oklahoma; Nicholas J. DiMichael, Frederic L. Wood, and Jeffrey O. Moreno of Donelan, Cleary, Wood & Maser, Washington, D.C., were on the brief for amici curiae, The National Industrial Transportation League, American Frozen Food Institute, and Americans for Safe and Competitive Trucking.
 Before HENRY, SETH, and BRISCOE, Circuit Judges.
 BRISCOE, Circuit Judge.
 
 
 1
 Plaintiffs, the Oklahoma Corporation Commission, the Montana Public Service Commission, the Kansas Corporation Commission, the Attorney General of the State of Michigan, the Attorney General of the State of Kansas, the Coalition Against Federal Preemption of State Motor Carrier Regulation, and the International Brotherhood of Teamsters, filed this action for declaratory and injunctive relief claiming that Sec. 601 of the Federal Aviation Administration Authorization Act of 1994, Pub.L. No. 103-305, 108 Stat. 1605 (1994), was unconstitutional. After a trial on the merits, the district court issued a written opinion denying plaintiffs' claims for relief. We affirm the district court's dismissal of plaintiff's claims after concluding Sec. 601 does not violate the Commerce Clause, the Tenth Amendment, or the Guarantee Clause.
 
 I.
 
 2
 Section 601 of the Federal Aviation Administration Authorization Act of 1994 was enacted by the 103rd Congress, 2nd Session, on August 23, 1994, was signed into law by President Bill Clinton, and took effect on January 1, 1995. Section 601 effectively preempts, with a few minor exceptions, state regulation of intrastate motor carrier activities. In particular, Sec. 601 amends 49 U.S.C. Sec. 41713(b)(4) to read as follows:
 
 
 3
 (4) Transportation by air carrier or carrier affiliated with a direct air carrier.
 
 
 4
 (A) General rule. Except as provided in subparagraph (B), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier or carrier affiliated with a direct air carrier through common controlling ownership when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).
 
 
 5
 (B) Matters not covered. Subparagraph (A)
 
 
 6
 (i) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization; and
 
 
 7
 (ii) does not apply to the transportation of household goods, as defined in section 10102 of this title.
 
 
 8
 (C) Applicability of paragraph (1). This paragraph shall not limit the applicability of paragraph (1).
 
 
 9
 Pub.L. No. 103-305, 108 Stat. 1605, 1606 (1994).
 
 
 10
 Section 601 also amends 49 U.S.C. Sec. 11501 by adding subsection (h), which reads as follows:
 
 
 11
 (h) Preemption of State economic regulation of motor carriers.
 
 
 12
 (1) General rule. Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4) of this title) or any motor private carrier with respect to the transportation of property.
 
 
 13
 (2) Matters not covered. Paragraph (1)
 
 
 14
 (A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization; and
 
 
 15
 (B) does not apply to the transportation of household goods.
 
 
 16
 (3) State standard transportation practices.
 
 
 17
 (A) Continuation. Paragraph (1) shall not affect any authority of a State, political subdivision of a State, or political authority of 2 or more States to enact or enforce a law, regulation, or other provision, with respect to the intrastate transportation of property by motor carriers, related to
 
 
 18
 (i) uniform cargo liability rules,
 
 
 19
 (ii) uniform bills of lading or receipts for property being transported,
 
 
 20
 (iii) uniform cargo credit rules, or
 
 
 21
 (iv) antitrust immunity for joint line rates or routes, classifications and mileage guides, if such law, regulation, or provision meets the requirements of subparagraph (B).
 
 
 22
 (B) Requirements. A law, regulation, or provision of a State, political subdivision, or political authority meets the requirements of this subparagraph if
 
 
 23
 (i) the law, regulation, or provision covers the same subject matter as, and compliance with such law, regulation, or provision is no more burdensome than compliance with, a provision of this subtitle or a regulation issued by the Interstate Commerce Commission or the Secretary of Transportation under this subtitle; and
 
 
 24
 (ii) the law, regulation, or provision only applies to a carrier upon request of such carrier.
 
 
 25
 (C) Election. Notwithstanding any other provision of law, a carrier affiliated with a direct air carrier through common controlling ownership may elect to be subject to a law, regulation, or provision of a State, political subdivision, or political authority under this paragraph.
 
 
 26
 Pub.L. No. 103-305, 108 Stat. 1606 (1994).
 
 II.
 
 27
 We review the district court's interpretations of law de novo, and any relevant findings of fact for clear error. Roberts v. Colorado State Bd. of Agriculture, 998 F.2d 824, 826 (10th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 580, 126 L.Ed.2d 478 (1993).
 
 III.
 
 28
 As a preliminary matter, we must address whether this court has subject matter jurisdiction to consider plaintiffs' claims. The Department of Justice asserts that neither of the jurisdictional bases cited in plaintiffs' complaint, 28 U.S.C. Sec. 1331 (the federal question statute) and 28 U.S.C. Secs. 2201-2202 (the Declaratory Judgment Act), waives the sovereign immunity of the United States. Further, the Department argues the Administrative Procedure Act (APA), 5 U.S.C. Sec. 701 et seq., which was relied upon by the district court but was not cited in plaintiffs' complaint, has no application in this case because, according to the Department, no agency has acted pursuant to the challenged provisions of Sec. 601.
 
 
 29
 Sovereign immunity generally bars suits against the United States or its agencies, whether brought by a private party or by a state. Block v. North Dakota, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983). Thus, under sovereign immunity principles, the United States may be sued only if and to the extent that it consents. United States v. Dalm, 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). " '[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " Id. (quoting United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). "Such a waiver of sovereign immunity must be strictly construed in favor of the sovereign and may not be extended beyond the explicit language of the statute." Fostvedt v. United States, 978 F.2d 1201, 1202 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1589, 123 L.Ed.2d 155 (1993).
 
 
 30
 Significantly, the doctrine of sovereign immunity is not always applicable to suits filed against federal entities or officials. In particular, one of the well-established exceptions to the doctrine limits its application in declaratory and/or injunctive suits against federal entities or officials seeking to enjoin the enforcement of an unconstitutional statute. Dugan v. Rank, 372 U.S. 609, 621-22, 83 S.Ct. 999, 1006-07, 10 L.Ed.2d 15 (1963); Malone v. Bowdoin, 369 U.S. 643, 647-48, 82 S.Ct. 980, 983-84, 8 L.Ed.2d 168 (1962); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-90, 69 S.Ct. 1457, 1461-62, 93 L.Ed. 1628 (1949); Tenneco Oil Co. v. Sac and Fox Tribe, 725 F.2d 572, 574 (10th Cir.1984); Kozera v. Spirito, 723 F.2d 1003, 1008 (1st Cir.1983). As the Court noted in Larson, the doctrine does not apply in such cases because "the conduct against which specific relief is sought is beyond the officer's power and is, therefore, not the conduct of the sovereign." 337 U.S. at 690, 69 S.Ct. at 1462. "Any other rule would mean that a claim of sovereign immunity would protect a sovereign in the exercise of power it does not possess." Tenneco Oil Co., 725 F.2d at 574. We find this exception applicable to the claims filed by plaintiffs in this case.
 
 IV.
 
 31
 The Commerce Clause of the United States Constitution, provides that Congress shall have the Power "[t]o regulate Commerce ... among the several States," Art. 1, Sec. 8, cl. 3, and "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers...." Art. 1, Sec. 8, cl. 18.
 
 
 32
 Recently, in United States v. Lopez, --- U.S. ----, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court identified three broad categories of activity that Congress may regulate under the Commerce Clause: (1) "the use of channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce"; and (3) "activities that substantially affect interstate commerce." --- U.S. at ---- - ----, 115 S.Ct. at 1629-30. With respect to the third category of activity, the Court emphasized that it had repeatedly "upheld a wide variety of congressional Acts regulating intrastate economic activity where [it had] concluded that the activity substantially affected interstate commerce." --- U.S. at ----, 115 S.Ct. at 1630.
 
 
 33
 Here, we find that the activity at issue, state regulation of intrastate motor carrier activities, falls squarely within the third category of activity cited in Lopez. In enacting Sec. 601, Congress made express findings, set forth in subsection (a) of Sec. 601, that state regulation of intrastate motor carrier activities substantially affects interstate commerce:
 
 
 34
 (1) [T]he regulation of intrastate transportation of property by the States has
 
 
 35
 (A) imposed an unreasonable burden on interstate commerce;(B) impeded the free flow of trade, traffic and transportation of interstate commerce; and
 
 
 36
 (C) placed an unreasonable cost on the American consumers; and
 
 
 37
 (2) certain aspects of the State regulatory process should be preempted.
 
 
 38
 Pub.L. No. 103-305.
 
 
 39
 These findings are further supported by the House Report that accompanied Sec. 601. Therein, the House of Representatives specifically noted as follows:
 
 
 40
 State economic regulation of motor carrier operations causes significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology and curtails the expansion of markets. According to Department of Transportation estimates, preemption of State economic regulation could eventually yield $3-8 billion per year in savings. Other estimates put the savings as high as $5-12 billion. The sheer diversity of these regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of doing business. In hearings held on this issue, numerous examples have been cited in which rates for shipments within a state exceed rates for comparable distances across state lines. In the small package express business, companies frequently ship goods across state lines and back into the state of origin to avoid the higher rates for purely intrastate shipments. Lifting of these antiquated controls will permit our transportation companies to freely compete more efficiently and provide quality service to their customers. Service options will be dictated by the marketplace; and not by an artificial regulatory structure.
 
 
 41
 H.R.Conf.Rep. No. 677, 103rd Cong., 2d Sess. (1994).
 
 
 42
 We believe these findings are rational. See Hodel v. Virginia Surface Min. & Recl. Assn., 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981). Granted, there are undoubtedly various state regulations that affect and pertain only to purely intrastate motor carrier activities, and have little or no effect on interstate commerce. Nonetheless, Congress rationally determined the regulation of intrastate motor carrier activities, considered as a whole, does in fact impact and impede interstate commerce.
 
 
 43
 Having determined that state regulation of intrastate motor carrier activities is an "activity" that may be regulated by Congress under the Commerce Clause, the only remaining question is whether "the means chosen by [Congress] [are] reasonably adapted to the end permitted by the Constitution." Hodel, 452 U.S. at 276, 101 S.Ct. at 2360. Plaintiffs set forth several reasons why Sec. 601 is not reasonably adapted to the end sought by Congress. First, plaintiffs claim Sec. 601 is overly broad and preempts not only state economic regulation of intrastate trucking, but also "state tort laws, state antitrust laws, state consumer protection laws, state laws regarding cargo loss and damage claims, state laws governing the transportation of solid and hazardous waste, and state uniform commercial codes." Appellants' br. at 20. Second, plaintiffs argue that the overbreadth of Sec. 610 "has created a disjointed two-tiered system of regulation," in which interstate carriers are regulated by Congress, but in which purely intrastate carriers remain wholly unregulated. Appellants' br. at 21-22. Finally, plaintiffs argue that Sec. 601 is improper because it preempts state law "in favor of nothing." Appellants' br. at 23.
 
 
 44
 Notwithstanding plaintiffs' arguments, the means chosen by Congress are reasonably adapted to the ends sought by Congress. First, Sec. 601's preemption of state regulations pertaining to "price[s], route[s], or service[s]" of intrastate motor carriers clearly serves to eliminate the "patchwork" of varying state regulations that concerned Congress. Second, although Sec. 601 undoubtedly preempts a wide range of state regulations, it is far from clear that its impact is as far-reaching as plaintiffs would have the court believe. In fact, as pointed out by the Department of Justice, many of the examples cited by plaintiffs are purely speculative and are based upon an interpretation of Sec. 601 not shared by the Department of Justice or the Department of Transportation. Moreover, although plaintiffs claim that Sec. 601 will preempt state legislation of garbage and recyclable collection, representatives from Congress, as well as the Interstate Commerce Commission, have indicated it will not. 140 Cong.Rec. E2204-03 (daily ed. Oct. 7, 1994) (statement by Rep. Mineta). Third, assuming the rationality of Congress' findings with respect to the negative impact of state regulations on interstate commerce, what choice did Congress have except to enact a statute that preempts a fairly broad range of state economic regulations? In any event, the Supreme Court rejected the notion of second-guessing Congress by belatedly reviewing other possible legislative options. See South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 190, 58 S.Ct. 510, 516-17, 82 L.Ed. 734 (1938). Finally, although Sec. 601 may have had some unintended effects, such as freeing the reins on intrastate towing and wrecker services, plaintiffs have not cited any cases holding that unintended effects of legislation, by themselves, serve to make the legislation irrational for purposes of Commerce Clause analysis.
 
 
 45
 For these reasons, the district court properly concluded that Sec. 601 does not violate the Commerce Clause.
 
 V.
 
 46
 The Tenth Amendment to the Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."
 
 
 47
 In New York v. United States, 505 U.S. 144, 155-56, 112 S.Ct. 2408, 2417, 120 L.Ed.2d 120 (1992), the Supreme Court noted that "[i]n a case ... involving the division of authority between federal and state governments," the inquiries under the Commerce Clause and the Tenth Amendment "are mirror images of each other." Specifically, the Court noted as follows:
 
 
 48
 If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States; if a power is an attribute of state sovereignty reserved by the Tenth Amendment, it is necessarily a power the Constitution has not conferred on Congress.
 
 
 49
 Id.
 
 
 50
 Thus, even if plaintiffs are correct in their assertion that Sec. 601 intrudes upon a domain traditionally left to the states, it is constitutional as long as it falls within the commerce power. Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2395, 2400-01, 115 L.Ed.2d 410 (holding that Congress may impose its will on the states as long as it is acting within the powers granted by the Constitution); United States v. Lopez, 2 F.3d 1342, 1346-47 (5th Cir.1993), aff'd, --- U.S. ----, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). Having concluded that Sec. 601 was a proper exercise of the commerce power by Congress, the only remaining question we must decide is whether Congress, in enacting Sec. 601, somehow "commandeer[ed] the legislative processes of the States...." Hodel, 452 U.S. at 288, 101 S.Ct. at 2366.
 
 
 51
 Plaintiffs argue that Sec. 601 violates the Tenth Amendment because it does not give the states a choice between regulating in a fashion consistent with federal regulation of motor carriers or having their state regulatory scheme preempted by a federal regulatory scheme, but instead compels the states not to regulate at all. In addition, plaintiffs assert that enactment of Sec. 601 has created a "two-tiered system" which allows Congress to "hide behind the states and avoid accountability." Appellants' br. at 35. Specifically, plaintiffs claim this two-tiered system "creates the false impression that state governments are unresponsive to their electorate's needs, while the federal government, which continues to regulate, is addressing their needs." Appellants' br. at 35.
 
 
 52
 Neither of plaintiffs' arguments is meritorious. In New York, the Court reaffirmed that Congress may not exercise its Article I plenary powers to " 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.' " 505 U.S. at 145, 112 S.Ct. at 2420 (quoting Hodel, 452 U.S. at 288, 101 S.Ct. at 2366). Notwithstanding these limitations, however, Congress does enjoy "several options short of imposing a coercive regulatory directive on the states." Ponca Tribe of Okla. v. Oklahoma, 37 F.3d 1422, 1433 (10th Cir.1994). First, Congress may, under its spending power, attach conditions on the states' receipt of federal funds. Id. Second, Congress can offer the states the choice of regulating a given activity in accordance with federal standards or having state law preempted by federal regulation. Id. Finally, Congress may, under the Supremacy Clause, "preempt an entire field of regulation and thereby deprive the states of any regulatory role." Id.
 
 
 53
 Here, Congress has clearly chosen the third option, to preempt the entire field of price, service, and route regulation of intrastate motor carrier activities. Although plaintiffs have attempted to otherwise characterize Congress' actions, it is clear that Congress has not compelled the states to voluntarily act by enacting or administering a federal regulatory program. Rather, Congress has simply imposed rules on the states via its Supremacy Clause powers. See Laurence H. Tribe, American Constitutional Law Sec. 6-25 (2d ed. 1988) ("So long as Congress acts within an area designated to it, the preemption of conflicting state or local action ... flow[s] directly from the substantive source of power of the congressional action coupled with the supremacy clause of article VI...."). Thus, contrary to plaintiffs' assertions, there is no risk that the states will be held politically accountable for the actions of the federal government. Instead, it is abundantly clear that the federal government is responsible for the lack of intrastate motor carrier price, route, and service regulation.
 
 
 54
 We affirm the district court's denial of plaintiffs' Tenth Amendment challenge to Sec. 601.
 
 VI.
 
 55
 The Guarantee Clause of the Constitution provides that "[t]he United States shall guarantee to every State in this Union a Republican Form of Government...." Art. IV, Sec. 4.
 
 
 56
 In their final argument, plaintiffs contend Sec. 601 violates the Guarantee Clause because it "has so infringed upon state sovereignty that the guarantee of a republican form of government has been breached." Appellants' reply br. at 24. Plaintiffs offer no further explanation of this argument, nor do they cite any case law in support of their position. In response, the Department of Justice asserts that plaintiffs' argument is undermined by the fact that Sec. 601 was unanimously passed in both the Senate and the House of Representatives, without objection by any of the elected senators or representatives from any of the forty-one states that, prior to January 1, 1995, regulated intrastate motor carrier activities. Moreover, the Department suggests that plaintiffs cannot assert a justiciable claim under the Guarantee Clause. Finally, the Department argues plaintiffs cannot succeed on such a claim in this case because "Section 601 is a substantive constraint on the power of state governments to regulate intrastate trucking, not a fundamental restructuring of the form of state governments," and therefore the treatise cited by plaintiffs provides no support for plaintiffs' claim. Appellees' br. at 30.
 
 
 57
 In New York, the Supreme Court discussed, but did not resolve, the question of whether claims under the Guarantee Clause are justiciable. 505 U.S. at 182-86, 112 S.Ct. at 2432-33. In particular, the Court noted that, since its decision in Luther v. Borden, 7 How. 1, 12 L.Ed. 581 (1849), there has been some belief that violations of the Guarantee Clause cannot be challenged in the courts because they present nonjusticiable political questions. 505 U.S. at 184-85, 112 S.Ct. at 2433. Continuing, the Court noted it has suggested, in more recent opinions, that this belief may be incorrect, and that "not all claims under the Guarantee Clause present nonjusticiable political questions." Id. However, the Court ultimately found it unnecessary to "resolve this difficult question...." Id.
 
 
 58
 In American Constitutional Law Sec. 5-23, the Guarantee Clause is discussed in the following manner:
 
 
 59
 The most fundamental threats to state sovereignty--those that genuinely portend reduction of the states into "field offices of the national bureaucracy" or "bureaucratic puppets of the Federal Government"--would seem to arise less from federal laws that impose substantive constraints on state and private actors alike ... than from federal laws that restructure the basic institutional design of the system a state's people choose for governing themselves. If there is any form of congressional assault that might truly " 'nibble away at state sovereignty, bit by bit, until someday essentially nothing is left but a gutted shell,' " it is an assault on those "democratic processes through [which] ... citizens ... retain the power to govern ... their local problems."
 
 
 60
 Assuming, without deciding, that plaintiffs' claim is justiciable, there appears to be no merit to it. As noted by the Department of Justice, "Section 601 is a substantive constraint on the power of state governments to regulate intrastate trucking, not a fundamental restructuring of the form of state governments." Appellees' br. at 30. More specifically, having concluded that Sec. 601 does not violate the Commerce Clause or the Tenth Amendment, it is difficult to understand how Sec. 601 could be construed in any way as affecting the states' ability to structure their own governments as they see fit. The district court was correct in denying this claim.
 
 VII.
 
 61
 The district court's denial of plaintiffs' claims for declaratory and injunctive relief is AFFIRMED.